W. H. COCKE and Tula Stokes Cocke, William H. Cocke, Jr., and Beulah R. Cocke, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. Nos. 65 H 117, 65 H 118.

United States District Court
S. D. Texas,
Houston Division.

March 29, 1966.

Homer L. Bruce, Houston, Tex., for plaintiffs.

James R. Gough, Asst. U. S. Atty., Houston, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

INGRAHAM, District Judge.

This consolidated cause came on to be heard and the plaintiffs and the defendant appeared by their attorneys and the court having considered the pleadings, the stipulations, the admissions on file and the evidence and the briefs and argument of counsel for the plaintiffs and defendant, makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. This is a consolidated cause of two causes to recover from the defendant income taxes paid to the defendant under the provisions of the Internal Revenue Code of 1954. Plaintiffs W. H. Cocke and wife sue to recover certain income taxes paid by them to the defendant for the year 1958, and plaintiffs William H. Cocke, Jr. and wife sue to recover certain income taxes paid by them to the defendant for the year 1957.

2. On October 12, 1955, the plaintiffs Cocke and wife, R. H. Goodrich, and Humble Oil & Refining Company (herein referred to as "Humble") owned certain working and mineral interests in certain oil and gas properties in St. Martin Parish, Louisiana, which will be referred to as the "Goodrich-K properties". On that date the said parties executed an operating agreement under which Humble would be the operator. The contract provided in part:

> "Operator shall advance all monies necessary for conducting the operations hereunder and shall reimburse itself currently for Non-Operator's share of expenses and charges to the Joint Account out of one-half (½) of Non-Operator's proportionate interest in the current production."

This contract was in effect in reference to these properties during the year 1958.

3. On January 1, 1956, the plaintiffs Cocke and wife, and Cocke, Jr. and wife, R. H. Goodrich, H. R. Goodrich, Humble, and the California Company (herein called "California") owned certain working and mineral interests in certain oil and gas properties in Iberia Parish, Louisiana, which will be referred to as the "Bayou Postillion properties". On that date the said parties executed an operating agreement under which Humble

would be the operator. The contract provided in reference to Humble, California and the two Goodriches and the two Cockes as follows:

"1. Goodrich and Cocke shall bear all costs in connection with the drilling of wells hereunder up to but not including the permanent tank batteries, in an amount equal to one-half of Goodrich and Cocke's proportionate interest. As to each well drilled hereunder, Humble and California shall advance Goodrich and Cocke's share of said costs, and shall be reimbursed only if such well be completed as a producer of oil, gas or other minerals, and then such reimbursement shall be only out of one-fourth of Goodrich and Cocke's proportionate interest. With respect to each well completed as a producer hereunder, all costs incurred in connection therewith subsequent to such completion, shall be borne by Goodrich and Cocke in an amount equal to the proportionate interest of Goodrich and Cocke in the Joint Area, provided, however, that Humble and California shall advance Goodrich and Cocke's share of all such costs, and shall be reimbursed only out of one-fourth of Goodrich and Cocke's proportionate interest in such well."

This contract was in effect in reference to these properties during the year 1957.

4. By the execution of those two operating agreements neither the plaintiffs nor any other party thereto transferred to the operator or any other party any part of their interest in the minerals. The plaintiffs and all other parties to the operating agreements remained personally liable to all outside parties involved in the operations of the properties, such as laborers, equipment suppliers, and third parties injured by the negligence of the operator, and they were liable as between themselves for their proportionate part of all such liabilities to such outside parties. This proportionate interest was defined in each of the operative agreements. For example, the agreement of October 12, 1955, provided:

"Whenever, in this Agreement, reference is made to 'proportion,' 'proportionate share,' 'proportionate part,' or 'proportionate interest,' or other similar designations, it shall mean the proportion that the working interest of each of the parties in the Joint Tracts bears to the total of the working interest in the Joint Tracts of the parties hereto."

The operating agreement of January 1, 1956, provided:

"Whenever in this Agreement reference is made to 'Proportion,' 'Proportionate Share,' 'Proportionate Part,' 'Proportionate Interest,' or other similar designation, it shall mean the proportion that the interest of each of the parties in the Joint Area on a surface acre basis bears to the total interest of the parties in the Joint Area."

As to the liabilities of the parties the contracts provided:

"The Joint Tracts shall not be operated hereunder as a partnership venture, and the liability of the parties hereunder shall be several and not joint or collective. Each party shall be responsible only for its obligations as set out herein and shall be liable only for its proportionate share of the cost of operations as set out hereunder." (Contract of October 12, 1955).

"The liability of the parties hereunder shall be several and not joint or collective. Each party shall be responsible only for its obligations as set out herein and shall be liable only for its proportionate share of the costs of operations hereunder. Nothing herein shall be construed as an assignment or transfer of the leases or an interest therein as between the parties hereto." (Contract of January 1, 1956).

As to each party's ownership of the oil and gas and its proceeds, the contracts provided:

"Each of the parties hereto shall share in the production from the Joint Tracts in the proportion that the interest of each of the parties in the

Joint Tracts bears to the total of the interest in the Joint Tracts of the parties hereto." (Contract of October 12, 1955).

"Subject to the terms of Article V hereof, all production from the Joint Area and all property and equipment placed in and on same by Operator for the benefit of the Joint Account shall be owned by the parties hereto in accordance with their proportionate interest herein." (Contract of January 1, 1956).

5. For the year 1958 the plaintiffs Cocke and wife in their income tax return for 1958 took into account their entire proportionate part of the gross income from their Goodrich-K properties and Bayou Postillion properties and computed their depletion on that basis; deducted their entire proportionate part of the intangible drilling expenses and other operating expenses in reference to those properties; deducted their proportionate part of the production taxes applicable to their interest in the properties; and computed their depreciation on their entire proportionate part of the depreciable property. The defendant held that they should include in their gross income only the amounts retained by Humble out of their income under said two operating contracts; that they were not allowed to deduct any of the intangible drilling costs or other expenses that had been paid by Humble; that they should not be allowed to deduct any part of the production taxes applicable to their interest in the production except the amount retained out of their income by Humble; that they were not entitled to deduct any depreciation on any of the depreciable equipment on said properties; and that their allowance for depletion should be computed only in reference to the gross income retained by Humble. The defendant on account of said action assessed the tax for which the plaintiffs Cocke and wife sue in this cause. Said plaintiffs paid that tax and the interest thereon as set out in their complaint and on the date set out therein.

6. For the year 1957 the plaintiffs Cocke, Jr. and wife in their income tax return for 1957 took into account their entire proportionate part of the gross income from their Bayou Postillion properties, and computed their depletion on that basis; deducted their entire proportionate part of the intangible drilling expenses and other operating expenses in reference to those properties; and computed their depreciation on their entire proportionate part of the depreciable property. The defendant held that they should include in their gross income only the amounts retained by Humble out of their income under the operating contract of January 1, 1956; that they were not allowed to deduct any of the intangible drilling costs or other expenses that had been paid by Humble; that they were not entitled to deduct any depreciation on any of the depreciable equipment on said properties, and that their allowance for depletion should be computed only in reference to the gross income retained by Humble. The defendant on account of said action assessed the tax for which the plaintiffs Cocke, Jr. and wife sue in this cause. Said plaintiffs paid that tax and the interest thereon as set out in their complaint and on the date set out therein.

7. It is stipulated by the plaintiffs and the defendant that if it should be held that the plaintiffs were correct in treating the items set forth in paragraphs 5 and 6 above as stated therein, the plaintiffs shall be entitled to recover from the defendant the amounts for which they sue in this consolidated cause.

8. Within less than two years after the dates on which the plaintiffs, respectively, paid said taxes and interest, the plaintiffs, respectively, filed with the United States District Director of Internal Revenue for the Austin District of Texas their claims for refund to them of said taxes and interest, all in accordance with the laws of the United States and the rules and regulations prescribed by the Commissioner of Internal Revenue and the Secretary of the Treasury. In said claims for refund the plaintiffs, re-

spectively, claimed that said taxes and interest should be refunded to them on the same grounds and for the same reasons as are set forth in their respective complaints in this cause as the grounds and reasons upon which they should recover said taxes and interest from the defendant.

On or about February 11, 1965, the Commissioner of Internal Revenue, acting through the District Director of Internal Revenue for the Austin District of Texas, mailed by certified mail to the plaintiffs, respectively, notice of the disallowance by him of their said respective claims for refund.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter of, and parties, under this consolidated cause.

2. This consolidated cause involves the questions as to the rights of parties having a carried interest in oil and gas properties that have been litigated and decided in favor of the taxpayers in Commissioner of Internal Revenue v. J. S. Abercrombie Co., 162 F.2d 338 (5 C.A.); Foster v. United States, 85 F.Supp. 447 (U. S. District Court, Houston Division, opinion by Chief Judge Kennerly); and Prater v. C. I. R., 273 F.2d 124 (5 C.A.). See Sowell v. C. I. R., 302 F.2d 177 (5 C.A.), where the court at pages 180 and 181 reaffirmed its holdings in C. I. R. v. J. S. Abercrombie Co., supra. The interests of plaintiffs and the other non-operators in the properties covered by the two operating contracts were not what are commonly designated as net profits interests.

3. The Commissioner of Internal Revenue erred in making the changes, referred to in paragraphs 5 and 6 of the foregoing findings of fact, that he did in connection with the income taxes for the plaintiffs Cocke and wife for 1958 and the plaintiffs Cocke, Jr. and wife for 1957.

4. The plaintiffs, respectively, are entitled to recover of and from the defendant the overpayment of income taxes and interest thereon in the amounts set forth in their respective complaints with interest thereon at the rate of 6% per annum from the date such payments were paid by the plaintiffs, respectively, to the defendant as set forth in their respective complaints.

5. Plaintiffs are each entitled to recover of and from the defendant all costs in this cause allowed by law.