T.C. Memo. 2010-223


UNITED STATES TAX COURT


JOEL P. ARNOLD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20879-08.          Filed October 13, 2010.


<u>Herman D. Baker</u>, for petitioner.

<u>Jennifer K. Martwick</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


GOLDBERG, <u>Special Trial Judge</u>:  Respondent determined a $3,471 deficiency in petitioner's 2005 Federal income tax. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions,[1] the two issues for decision are whether petitioner is entitled to unreimbursed employee business expense deductions claimed in 2005 for: (1) Use of his personal vehicle; and (2) job search expenses.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Georgia when he filed his petition.

In 2005 petitioner worked as a senior auditor in the Healthcare Audits Division of the Georgia Department of Audits and Accounts (the department), headquartered in Atlanta, Georgia. He had been with the department for 4 years.

Petitioner was divorced by 2005. In 2005 he owned a home about 40 miles from the department's Atlanta headquarters. Petitioner's son lived full time with petitioner during all of 2005. According to petitioner, his son turned 9 in 2005 and was in childcare before and after school. However, medical records in evidence state that his son was age 18 in 2005. Petitioner's son suffered from multiple severe chronic illnesses, including renal failure.

---

[1]Petitioner conceded $290 of the $2,164 in student loan interest that he had deducted. Respondent conceded that petitioner is entitled to a $42 deduction for tax return preparation expenses.

Petitioner's job required frequent travel throughout Georgia. He performed and supervised onsite audits of the financial records of nursing homes at either the nursing facilities themselves or at their main offices. Many of the locations were quite far from the department's headquarters, and the audits often continued for several days. Depending on petitioner's schedule, either petitioner or petitioner's sister would pick up petitioner's son from school and bring him home.

The department made vehicles available for its employees who were traveling to audit sites. However, petitioner neither requested nor used a department vehicle during 2005. Instead, petitioner drove his personal vehicle to all of his assignments. Petitioner never requested and did not receive reimbursement from the department for his work-related driving.

Petitioner recorded mileage on a commonplace commercial spiral-bound 8-1/2 by 11-inch monthly calendar showing the days for each month. For each day petitioner noted the name of a destination city or town and the mileage from Atlanta to and from that destination. The log is not clear as to what petitioner meant by "Atlanta": whether he started and ended each trip from the department's headquarters or calculated the mileage from headquarters or considered his home as part of the Atlanta metropolitan area and computed the mileage from his house. Other elements of the log are also difficult to interpret. For

instance, petitioner crossed out certain dates for which he recorded mileage. On other dates he noted a doctor's visit and/or 0.7 miles for a trip within the Atlanta city limits, and then on the same dates in a different handwriting style he noted mileage for a long journey. Petitioner also attached an adding machine tape of mileage that for no apparent reason omitted certain mileage that he had recorded on the calendar.

Nonetheless, as best the Court can decipher, it appears that in aggregate for the year at issue, petitioner reported 21 days of intra-Atlanta round trips of 1.4 miles and 249 days of driving to audit sites outside of the Atlanta metropolitan area, returning home on all but a couple of the nights. The out-of-town trips consisted of the following round trip mileage:

| Round Trip Distance | Number of Days | Percentage of Total |
|---|---|---|
| < 100 Miles | 40 | 16 |
| 100-199 Miles | 39 | 16 |
| 200-299 Miles | 112 | 45 |
| 300-399 Miles | 45 | 18 |
| 400-499 Miles | 7 | 3 |
| 500 or More Miles | 6 | 2 |
| Total | 249 | 100 |

Thus, two-thirds of petitioner's mileage consisted of round trips of at least 200 miles, including 58 days (45 + 7 + 6) of driving 300 miles or more. Often these trips were nearly daily. For example, from March 21 to May 2, 2005, a span of 32 business

days, petitioner reported 22 days of 296.8-mile round trips between Atlanta and Augusta, Georgia, and 7 days of 369.4-mile round trips between Atlanta and Albany, Georgia. Petitioner's longest drive during the year was on May 23, 2005, when he traveled 681.9 miles from Atlanta to Brunswick to Columbus and back to Atlanta. His second longest drive was on June 9, 2005, when he traveled 668.7 miles from Greensboro to Hinesville to Lafayette to Atlanta. Because of the ambiguity of petitioner's notation that all the drives originated and ended in Atlanta, we cannot determine whether the 80-mile round trip from petitioner's home to the department's headquarters should be added to these figures to determine petitioner's actual driving distances.

Petitioner filed his 2005 Federal income tax return, reporting $49,854 of adjusted gross income and $40,100 of itemized deductions. Petitioner deducted $25,973 as an unreimbursed employee business expense for use of his personal vehicle. On Form 2106-EZ, Unreimbursed Employee Business Expenses, attached to his return, he reported that he drove his vehicle 59,302 miles for his job, 3,763 miles for commuting, and 1 mile for other personal use.[2] Using the 249 driving days as a denominator, petitioner therefore claimed that for every day he

---

[2]Rev. Proc. 2004-64, sec. 5.01, 2004-2 C.B. 898, 900, allowed a 40.5-cents-per-mile standard mileage rate for business use of a vehicle in 2005. Announcement 2005-71, 2005-2 C.B. 714, increased the rate to 48.5 cents per mile for business miles driven after Aug. 31, 2005.

drove, he did so for his job, averaging about 238.2 miles (59,302/249) per day.

The Internal Revenue Service (IRS) selected petitioner's return for examination. In the notice of deficiency the IRS disallowed, as pertinent here, all of petitioner's $25,973 deduction for business use of his personal vehicle and all of his $185 deduction for job search expenses. The notice stated that "since you did not establish that the business expense shown on your tax return was paid or incurred during the taxable year and that the expense was ordinary and necessary to your employment, we have disallowed the amount shown."

With respect to the $185 in job search expenses that petitioner deducted for 2005, petitioner stated that the amount represented postage to mail "resumes, follow-up letters, and credentials" to prospective employers. The Court received into evidence copies of 10 of petitioner's canceled checks payable to the U.S. Postmaster totaling $147.20.

Petitioner petitioned this Court, contending:

> The employee business expenses claimed on the return
> were ordinary and necessary and they were not
> reimbursed by the employer. Evidence was submitted to
> the IRS that the employer did not approve reimbursement
> for those expenses but IRS did not find the evidence to
> be sufficient. Taxpayer disagrees with that
> determinaton [sic].

The Court received into evidence a letter dated February 25, 2008, that Meg Ramsay, the department's human resources manager,

prepared in response to a request for information from the IRS

regarding petitioner.  Ms. Ramsay wrote, in pertinent part:

> In 2005, the department of Audits and Accounts
> maintained a fleet of vehicles, and employees were
> expected to use these vehicles when they traveled on
> official state business.  Our Department policy only
> allows employees to be reimbursed for mileage in a
> personal vehicle if the use of the vehicle was approved
> in advance.  Since we maintained a fleet of vehicles,
> approval to use a personal vehicle, and be reimbursed
> for such use, was not common practice.  Generally,
> employees who have personal reasons for traveling by
> personal vehicle were not eligible for mileage
> reimbursement.
>
> For the year in question [2005], we have reviewed the
> travel expense statements for Joel P. Arnold and found
> there were no instances in which Joel Arnold was
> reimbursed for business miles driven in his personal
> vehicle during the year.

Ms. Ramsay enclosed, and the Court received into evidence, a

copy of the department's travel policy that was in effect for

2005.  The policy states in pertinent part (reproduced

literally):

> (A) <u>General Provisions</u>
>     Employees of the Department of Audits and Accounts
> will be reimbursed for actual travel expenses incurred
> while performing their official duties.  Travel
> expenses are incurred for overnight stays and, in
> certain circumstances, when overnight travel is not
> involved.  All travel must be authorized and approved
> by division directors or their designees.
>
> (B) <u>Lodging Expenses for Overnight Travel Within
>     Georgia</u>
>     Employees are encouraged to commute to audit sites
> that are within a reasonable driving distance.  No
> employee will be reimbursed for overnight lodging at
> audit sites that are within 30 miles of home or
> headquarters, or within the same county of their home
> or headquarters.  If the audit site is between 30 and

60 miles from home or headquarters, the employee must receive approval from the division director or his designee in order to be reimbursed for overnight lodging. This approval must be obtained in advance of the scheduled trip.

(E) <u>Travel by State-Owned or Personal Vehicles</u>
Employees who are on travel status are encouraged to use agency-owned vehicles, if available, for travel within the State of Georgia, and when appropriate for travel outside the State. However, if agency-owned vehicles are not available, employees may choose between using DOAS[3] or personal vehicles. Employees must receive prior approval from the division director, or his designee, to use a personal vehicle when an agency-owned vehicle is available.

(F) <u>Mileage Reimbursement for Use of Personal Vehicles</u>
Employees may be reimbursed for business miles traveled in a personal vehicle, provided the use of the personal vehicle was approved. * * * Employees may be reimbursed for the mileage incurred from the point of departure to the travel destination. During the normal week, the point of departure will be either the employee's residence or headquarters, whichever is nearer to the destination point. During weekends and holidays, employees should use the actual point of departure to calculate travel mileage. Employees are not entitled to mileage reimbursement for - travel between their place of residence and their official headquarters, or - personal mileage incurred while on travel status.

OPINION

I. <u>The Parties' Positions</u>

During the IRS examination petitioner stated in a letter to the examining agent that he used his personal vehicle rather than the department's fleet of vehicles because it was the "most logical choice" for two reasons: (1) As "the custodial parent of

---

[3]Department of Audits and Accounts.

a sick dependent", he wanted to be home every night to care for his son; and (2) the department had what he believed was an illegal vehicle insurance policy.  According to petitioner's understanding, the policy would not cover instances where employees used department vehicles for nonbusiness or personal purposes, such as in his situation if he had to return home on short notice because of a medical problem related to his son. Petitioner did not offer evidence to support his personal conclusion regarding the department's vehicle insurance coverage.

At trial petitioner testified that he did not submit requests for reimbursement because he believed the department would deny his requests on the grounds that:  (1) The department considered shorter trips as not being in travel status and, therefore, would not reimburse a mileage expense that is equivalent to a nonreimbursable commute; and (2) for longer distances that would qualify as being in travel status, petitioner returned home almost every night, and therefore he believed that he would not qualify for reimbursement because, according to his understanding, the department required an overnight stay.  In support of his understanding of the department's reimbursement policy, petitioner at trial read from portions of the department's travel policy.  The policy, however, does not validate petitioner's assumptions about reimbursement when in travel status.

Respondent, while sympathetic to the medical problems of petitioner's son, contends that those problems do not make petitioner's mileage deductible because "petitioner <u>voluntarily chose</u> to drive his personal vehicle rather than an agency-owned vehicle". Respondent further contends that even if petitioner had valid business reasons for driving his own vehicle, petitioner's expenses are not deductible because: (1) Petitioner did not seek department approval to drive his own vehicle as department policy required; and (2) petitioner did not seek reimbursement from the department for the mileage expenses he incurred.

## II. Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving that the deficiency is incorrect. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Under section 7491(a) the burden may shift to the Commissioner regarding factual matters affecting a taxpayer's liability for tax if the taxpayer produces credible evidence and meets other requirements of the section. Petitioner has neither argued for a burden shift nor established his compliance with the requirements of section 7491(a). Petitioner therefore bears the burden of proving that respondent's determination in the notice of deficiency is erroneous.

III. Petitioner's Personal Vehicle Mileage Expense

Taxpayers must maintain records relating to their income and expenses and must prove their entitlement to all claimed deductions, credits, and expenses in controversy. See sec. 6001; Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, supra at 115.

Section 162(a) allows a deduction for ordinary and necessary expenses that a taxpayer pays or incurs during the year in carrying on a trade or business. Lucas v. Commissioner, 79 T.C. 1, 6 (1982). Generally, the performance of services as an employee constitutes a trade or business. Primuth v. Commissioner, 54 T.C. 374, 377 (1970).

To be "ordinary" the transaction that gives rise to the expense must be of a common or frequent occurrence in the type of business involved. Deputy v. du Pont, 308 U.S. 488, 495 (1940). To be "necessary" an expense must be "appropriate and helpful" to the taxpayer's business. Welch v. Helvering, supra at 113.

Petitioner claims that he is entitled to a deduction for use of his personal vehicle as an ordinary and necessary business expense. Ordinarily, when an employee has a right to reimbursement for expenditures related to his status as an employee but fails to claim such reimbursement, the expenses are not deductible because they are not "necessary"; in other words, it is not "necessary" for an employee to remain unreimbursed for

expenses to the extent he could have been reimbursed. <u>Orvis v. Commissioner</u>, 788 F.2d 1406, 1408 (9th Cir. 1986), affg. T.C. Memo. 1984-533; <u>Lucas v. Commissioner</u>, <u>supra</u> at 7; <u>Kennelly v. Commissioner</u>, 56 T.C. 936, 943 (1971), affd. without published opinion 456 F.2d 1335 (2d Cir. 1972).

Petitioner was not entitled to reimbursement because he did not follow the department's travel policy. Had he followed the policy, he first would have requested use of one of the department's vehicles. If one was available, he would have avoided the expense associated with the use of his personal vehicle. If, on the other hand, a department vehicle was not available, he then could have requested approval to use his personal vehicle. Approval by the department would have entitled him to reimbursement for travel other than that between his residence and the department's headquarters.

The record is clear that petitioner chose to drive his personal vehicle for reasons unrelated to his employment. Petitioner stated he wanted to return home almost every night to be with his son. We note, however, petitioner's testimony regarding his son's age conflicts with the medical records. As we discuss below, we also note inaccuracies in petitioner's mileage log. These discrepancies affect our judgment of petitioner's credibility. Whatever reasons petitioner had for

returning home practically every night, they were not job related.

In addition, the department encouraged overnight stays when employees drove to sites 60 miles away or further.  Here again by making a personal choice to return home nightly instead of staying overnight near the audit site in a hotel room, the cost of which would have been reimbursable, petitioner incurred expenses for many additional miles that were unnecessary for his job.

Accordingly, the vehicle expense petitioner incurred was not a necessary expense.  Petitioner incurred the expense not for a reason related to his employment, but as the result of his personal choice; namely, to be home at night with his son.  Under section 262(a) a taxpayer may not deduct personal, living, or family expenses.  See Commissioner v. Flowers, 326 U.S. 465, 474 (1946) ("The exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors."); Walliser v. Commissioner, 72 T.C. 433, 437 (1979) (to show that an expense was not personal, the taxpayer must prove that the expense was incurred primarily to benefit his business and the continuation of his employment and that there was a proximate relationship between the claimed expense and his business); sec. 1.162-1(a), Income Tax Regs. (the expenditure must be "directly connected with or pertaining to the taxpayer's

trade or business"). In conclusion, for the foregoing reasons we sustain respondent's determination disallowing petitioner's vehicle mileage expense deduction for 2005.

IV. <u>Job Search Costs</u>

Petitioner deducted $185 in job search costs for 2005. Deductible job search costs include expenses incurred in searching for new employment in the employee's same trade or business. <u>Primuth v. Commissioner</u>, <u>supra</u> at 377-378. It does not matter whether the search is successful, or even whether the taxpayer accepts a new position. <u>Cremona v. Commissioner</u>, 58 T.C. 219, 221-222 (1972). If, however, the employee is seeking a job in a new trade or business, then the expenses are not deductible. <u>Frank v. Commissioner</u>, 20 T.C. 511, 513-514 (1953).

We find it credible that petitioner was searching for a new job in 2005, one requiring less travel. We also find it credible that petitioner was searching for work in the same trade or business since he was a senior auditor with a chronically ill son, making starting over in a new line of work improbable.

Petitioner substantiated his expenditure by providing copies of 10 canceled checks. The checks were payable to the U.S. Postmaster. Postage is a deductible job search expense. <u>Cheh v. Commissioner</u>, T.C. Memo. 1992-658; Rev. Rul. 77-16, 1977-1 C.B. 37. The 10 checks, however, totaled only $147.20. Accordingly, petitioner may deduct $147.20 as a job search expense. This

deduction, however, is subject to the section 67(a) limitation that individuals may deduct miscellaneous itemized deductions "only to the extent that the aggregate of such deductions exceeds 2 percent of adjusted gross income."

V. <u>Conclusion</u>

We have considered all of the other arguments made by petitioner, and, to the extent that we have not specifically addressed them, we conclude that they are without merit, irrelevant, or moot.

<u>Decision will be entered</u>

<u>under Rule 155</u>.